\\clesto\user\huthcm\Wptext\WPDOCS\03-17000W-ord(IWSMotions).wpd

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: WELDING FUME PRODUCTS | : | |
| LIABILITY LITIGATION | : | **Case No. 1:03-CV-17000** |
| | : | **(MDL Docket No. 1535)** |
| | : | |
| | : | **JUDGE O'MALLEY** |
| | : | |
| | : | <u>**MEMORANDUM AND ORDER**</u> |
| | : | |

Defendant Industrial Welding Supplies of Hattiesburg, Inc. d/b/a Nordan Smith ("Nordan Smith") has filed a series of virtually identical motions to dismiss; the motions are all directed at cases brought by Mississippi plaintiffs. *See* docket nos. 1294, 1295, 1297, 1298, 1299, 1300, 1301, 1302, 1303, 1304, 1305, 1306, 1307, & 1416.[1] These 14 motions assert that the claims brought by these Mississippi plaintiffs against Nordan Smith are all premised on Nordan Smith's role as a distributor of welding rods, but Mississippi law holds that "mere conduits" of a product are immune from product liability. Thus, Nordan Smith seeks to be dismissed as a party from all of these cases.

For the reasons stated below, the Court concludes Nordan Smith's arguments are not well taken. Accordingly, these motions are all **DENIED**. In addition, other, identical motions to dismiss filed by Nordan Smith in certain individual cases (listed in the multi-page chart in section III.A of this Order) are also **DENIED**.

Finally, other distributor defendants have filed similar motions in certain individual cases (listed in

---

[1] Each motion addresses a number of individual cases; the 14 motions combine to address a total of 649 cases.

a multi-page chart in section III.B of this Order).  In those cases where these motions are unopposed, the

motions to dismiss are **GRANTED**, and the distributors listed are **DISMISSED** from those cases, **without**

**prejudice**.  In those cases where the motions are opposed, the Court allows the plaintiffs to pursue

additional discovery on the matter until March 1, 2006, and reserves ruling until that time.


**I. Mississippi Product Liability Law**.

The thrust of Nordan Smith's motions to dismiss is that, under Mississippi product liability law, a

simple distributor or seller of a product cannot be held liable for injuries caused to a user of the product;

according to Nordan Smith, only if the distributor or seller also played a role in the design, testing,

manufacture, packaging or labeling of the product, or altered or modified the product, may liability be

imposed.  Complicating the Court's analysis of this assertion is that Mississippi product liability law was

amended twice in the last few years.  A review of this statutory history is set out below.

Beginning in 1993, product liability in Mississippi was governed by Miss. Code Ann. §11-1-63.  This

statute stated that "[t]he manufacturer *or seller* of [a] product" was liable if the product had certain defects.

*Id.* 11-1-63(a) (emphasis added).[2]  The statute went on to provide, however, that a seller would be

indemnified against liability in certain circumstances:

> The manufacturer of a product who is found liable for a defective product . . . shall
> indemnify a product seller for the costs of litigation, any reasonable expenses, reasonable
> attorney's fees and any damages awarded by the trier of fact unless the seller exercised
> substantial control over that aspect of the design, testing, manufacture, packaging or
> labeling of the product that caused the harm for which recovery of damages is sought; the
> seller altered or modified the product, and the alteration or modification was a substantial

---

[2] For example, a product is defective under Mississippi law if "it failed to contain adequate warnings
or instructions * * * and [this] condition rendered the product unreasonably dangerous to the user or
consumer; and [this] unreasonably dangerous condition of the product proximately caused the damages for
which recovery is sought."  Miss. Code. Ann. §11-1-63(a)(i)(2).

2

> factor in causing the harm for which recovery of damages is sought; *the seller had actual knowledge of the defective condition of the product at the time he supplied same*; or the seller made an express factual representation about the aspect of the product which caused the harm for which recovery of damages is sought.

*Id.* 11-1-63(g)(i) (emphasis added).  Notably, this provision did not relieve a seller from liability, it only provided indemnity to a seller from a manufacturer in certain circumstances.  The manufacturer and the seller of a defective product remained equally liable for a product defect.

Section 11-1-63 was amended effective January 1, 2003, when Mississippi enacted a new statute, Miss. Code Ann. §11-1-64, and provided that §11-1-63 was now "[s]ubject to the provisions of Section 11-1-64."  New section 11-1-64 introduced a procedure that a "defendant whose liability is based solely on his status as a seller in the stream of commerce" could follow to "be dismissed from a products liability claim."  Miss. Code. Ann. §11-1-64(1).  The procedure involved filing a motion to dismiss "accompanied by an affidavit which shall be made under oath and shall state that the defendant is aware of no facts or circumstances upon which a verdict might be reached against him, other than his status as a seller in the stream of commerce."  *Id.* §11-1-64(3).  After accelerated discovery, a court could then grant the motion to dismiss, but the dismissal could only be *without* prejudice, and could only be entered if a manufacturer defendant "from whom recovery may be had" remained in the case.  *Id.* §11-1-64(2, 5).[3]  While this procedure offered a seller a new mechanism to obtain a swift dismissal from a plaintiff's product liability case, the underlying substantive product liability law set out in §11-1-63 did not change.

---

[3]  Indeed, notwithstanding "dismissal" of the "innocent seller" from the action without prejudice, a "defendant dismissed pursuant to [§11-1-64] shall be considered to remain a party to such action . . . ." *Id.* §11-1-64(6).  This "rather peculiar" provision was added to ensure that, if an injured plaintiff could not ultimately recover from the manufacturer (due to, say, the manufacturer's subsequent insolvency), the plaintiff still retained the possibility of recovery against the "innocent seller" who had been "quasi-dismissed." *See Henderson v. Ford Motor Co.*, 340 F.Supp.2d 722, 725 (N.D. Miss. 2004); *Drake v. North Am. Phillips Corp.*, 204 F.Supp.2d 1204, 1206 (E.D. Mo. 2002) (construing a similar Missouri statute).  Retention of the "quasi-dismissed" defendant also carried jurisdictional and venue implications.

3

Less than two years later, Mississippi product liability law was amended again.  Specifically, two changes occurred effective September 1, 2004.  First, §11-1-64 was repealed in its entirety, annulling the mechanism sellers could use to obtain accelerated dismissal.[4]  Second, a new provision was added to §11-1-63, limiting a seller's liability:

> In any action alleging that a product is defective . . . , the seller of a product other than the manufacturer shall not be liable unless [1] the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or [2] the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or [3] *the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product.*  It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

Miss. Code Ann. §11-1-63(h) (emphasis added).  Unlike subsection (g) of §11-1-63, which continued to provide that a manufacturer had to *indemnify* a seller in certain circumstances, subsection (h) of §11-1-63 prescribed conditions where the seller was *relieved* of liability entirely.[5]  Put simply: before September 1, 2004, even if the product seller was only a "mere conduit" of the product, the seller and product manufacturer bore the same liability for a product defect (although the manufacturer might have to indemnify the seller); on and after September 1, 2004, a product seller who was a "mere conduit" of the product bore no liability at all for a product defect.

Which statutory regime is applicable to any given case depends on when the complaint in that case

---

[4]  Although §11-1-64 was repealed, §11-1-63 is still "[s]ubject to the provisions of Section 11-1-64."

[5]  Interestingly, under current Mississippi law, §11-1-63(g) provides that a manufacturer must indemnify a seller unless the seller "had *actual* knowledge of the defective condition of the product at the time he supplied same" (emphasis added), while §11-1-63(h) relieves a seller of liability unless he "had *actual or constructive* knowledge of the defective condition of the product at the time he supplied the product" (emphasis added).  Thus, it appears a seller who has only constructive knowledge of a product defect may be liable, but remain eligible for indemnification.

4

was filed (as opposed to, say, when the harm from the defect allegedly occurred).[6]  Thus, if the plaintiff filed his complaint between January 1, 2003 and September 1, 2004, a seller defendant may pursue the accelerated dismissal procedure set out in now-repealed §11-1-64; if the plaintiff filed his complaint on or after September 1, 2004, the accelerated dismissal procedure is no longer available to the named defendants.

## II. Analysis.

Some of Nordan Smith's currently-pending motions to dismiss invoke the mechanism created by then-applicable §11-1-64 (creating the procedure to obtain accelerated dismissal); these motions are accompanied by the required affidavit averring that Nordan Smith "is aware of no facts or circumstances upon which a verdict might be reached against [it], other than [its] status as a seller in the stream of commerce."  *Id.* §11-1-64(3).  Other of Nordan Smith's motions to dismiss invoke now-applicable §11-1-63(h) (limiting a seller's liability); these motions assert that Nordan Smith is not a proper defendant because it is a "mere conduit" of welding products.  The essence of the two types of motions is the same: Nordan Smith insists it cannot be held liable because it played no role in the design, testing, manufacture, packaging or labeling of any welding product it sold, nor did it alter or modify any welding product it sold.  Regardless of whether Mississippi law before or after September 1, 2004 applies, then, Nordan Smith argues it should be dismissed because it is named as a defendant only in its role as a seller in the stream of

---

[6]  *See, e.g.* Laws 2004, 1st Ex. Sess., Ch. 1, §20, eff. September 1, 2004 ("Sections 1 through 7 of this act shall apply to all causes of action filed on or after September 1, 2004.").

commerce.[7]

The Court concludes, however, that all of Nordan Smith's motions to dismiss fail because the plaintiffs have alleged Nordan Smith was more than a "mere conduit" of welding rods or a simple seller in the stream of commerce, and plaintiffs have adduced some evidence to support the allegation.  As noted above, current Mississippi law provides that "the seller of a product . . . shall not be liable unless . . . the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product."  *Id.* §11-1-63(h).  Earlier versions of Mississippi product liability law recognized a *greater* measure of liability for product sellers, not less; thus, §11-1-63 has always held that sellers may be liable if they had actual or constructive knowledge of a product defect when they sold the product.[8]  And in all of the cases where Nordan Smith seeks dismissal, the plaintiffs make out viable claims that Nordan Smith did have actual or constructive knowledge of a product defect.

The Court earlier addressed this precise point in its *Second Remand Order* (May 21, 2004).  *See* docket no. 224.  In the context of assessing whether the plaintiffs had fraudulently joined Nordan Smith and other Mississippi distributors, the Court concluded the plaintiffs had stated "a colorable, non-fraudulent basis for recovery."  *Id.* at 7.  Specifically, the Court concluded that:

---

[7] Although the parties do not address this point, it appears Nordan Smith would be eligible only for dismissal *without* prejudice if the law before September 1, 2004 applies, while this limitation does not inhere if the law after that date applies.  Out of an abundance of caution, Nordan Smith offers both arguments in each type of motion – that is, even if the complaint was filed between January 1, 2003 and September 1, 2004, Nordan Smith argues that new §11-1-63(h) still supports its arguments for dismissal; and even if the complaint was filed on or after September 1, 2004, now-repealed §11-1-64 does the same.

[8] For example, through all of its iterations, §11-1-63(c)(i) has always provided that, when a plaintiff claims "a product is defective because it failed to contain adequate warnings or instructions," the manufacturer and seller may be liable if, "at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition."

6

the plaintiffs provide a non-frivolous depiction of evidence and inferences to support their claim that Nordan Smith <u>did</u> have reason to know [that welding fumes could cause neurological injury] – there were documents available to industry participants showing the dangers of welding rods, and Nordan Smith was a large distributor in the business of conveying knowledge about the safety of the welding products it sold.  Given the evidence presented so far by both sides, this Court cannot say that no reasonable jury following Mississippi law could possibly conclude one or more of the Mississippi distributor defendants "knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition."  Miss. Code Ann. §11-1-63(c)(i).

*Id.* at 10.[9]

Even in the most recent iteration of its product liability law, the Mississippi legislature made clear it intended only "to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." *Id.* §11-1-63(h).  The plaintiffs have set forth a colorable claim that Nordan Smith was more than a mere conduit of welding products.  Accordingly, the motions to dismiss must all be denied.[10]

---

[9]  In its *Second Remand Order*, the Court further observed:
Nordan Smith [is] one of the largest distributors of welding products in Mississippi and other gulf coast states.  The plaintiffs present evidence showing that Nordan Smith has promoted itself as a leader in product safety awareness and provision of product safety training to its customers.  Plaintiffs argue that, if Nordan Smith claims leadership in obtaining and conveying knowledge regarding the safety of welding products, it 'should have known' of the danger that manganese contained in the fumes given off by welding rods can cause, and has caused, serious physical harm to product users.
*Second Remand Order* at 6-7.
In its current motions to dismiss, Nordan Smith asserts that, in fact, "[i]t has only been since the filing of this litigation that Nordan Smith has received anything that indicates or claims that the warnings of the manufacturers may have, at any time, been in any way inadequate," and "Nordan Smith in no way holds itself out as having greater knowledge of products such as welding rods and consumables, and safety issues related to them, than the companies that make them."  Docket no. 1416 at ¶¶16-17.  These assertions, however, do not alter the Court's earlier conclusion that plaintiffs have stated a product liability claim against Nordan Smith with enough color to avoid dismissal under Fed. R. Civ. P. 12 and Miss. Code Ann. §§11-1-63 & -64.

[10]  As before, at this juncture, "the Court's task is not to provide an authoritative answer whether the plaintiffs will ultimately prevail on the merits of their claims against" Nordan Smith.  *Second Remand Order* at 7.  The Court holds here only that Nordan Smith's motions for dismissal based on failure to state a viable claim must be denied.

## III.  Other Motions to Dismiss.

### A. Filed by Nordan Smith.

In addition to the 14 motions to dismiss filed by Nordan Smith on the master docket (listed in the first paragraph of this Order), all of which apply to more than one case, Nordan Smith has also filed a number of identical motions to dismiss in individual cases.  These motions, listed in the chart below, must also be **DENIED** for the same reasons stated above.

| Case No. | Case Caption | Docket No. of Motion |
|---|---|---|
| 04-CV-18610 | Hendry v. Airgas-Gulf States, Inc. | 6 |
| 04-CV-18672 | Evans v. Airgas-Gulf States, Inc. | 6 |
| 04-CV-18771 | Matthews v. Airgas-Gulf States, Inc. | 6 |
| 04-CV-18835 | Winters v. Airgas-Gulf States, Inc. | 6 |
| 04-CV-18878 | Coutch v. Airgas-Gulf States, Inc. | 6 |
| 04-CV-18899 | Hutto v. Airgas-Gulf States, Inc. | 5 |
| 04-CV-18987 | Overland v. Airgas-Gulf States, Inc. | 4 |
| 04-CV-19052 | Cary v. Airgas-Gulf States, Inc. | 5 |
| 05-CV-17741 | Eiland v. Lincoln Electric Co. | 28 |
| 05-CV-17742 | Rouse v. Lincoln Electric Co. | 27 |
| 05-CV-17743 | Christy v. Lincoln Electric Co. | 28 |
| 05-CV-17744 | Rouse v. Lincoln Electric Co. | 28 |
| 05-CV-17745 | Albritton v. Lincoln Electric Co. | 30 |
| 05-CV-17746 | Bailey v. Lincoln Electric Co. | 25 |
| 05-CV-17747 | Stallworth v. Lincoln Electric Co. | 28 |
| 05-CV-17748 | Broussard v. Lincoln Electric Co. | 28 |
| 05-CV-17749 | Chaney v. Lincoln Electric Co. | 28 |
| 05-CV-17750 | Pickich v. Lincoln Electric Co. | 25 |

| Case No. | Case Caption | Docket No. of Motion |
|---|---|---|
| 05-CV-17751 | Hathorn v. Lincoln Electric Co. | 28 |
| 05-CV-17805 | Holland v. Lincoln Electric Co. | 29 |

### B. Filed by Other Defendants.

In addition to Nordan Smith, four other distributor defendants – Capweld, Inc., Welding Engineering Supply Company, Inc. ("Wesco"), Airgas-Gulf States, Inc. ("Airgas"), and Southern Welding Supply, Inc. ("SWS") – have also filed motions to dismiss in individual Mississippi cases that were originally filed between January 1, 2003 and September 1, 2004. See the chart below, listing these cases. Like Nordan Smith, these defendants cite Miss. Code. Ann. §11-1-64 and assert they are entitled to dismissal because they were "mere conduits" of welding rod products, and nothing more.

Notably, in many instances, these motions to dismiss have not been opposed by the plaintiffs. Pursuant to Mississippi statute, this failure supports granting the motions. Section 11-1-64 explains that, once a seller files an affidavit and motion for dismissal on the basis that it is an "innocent seller," "[t]he parties shall have sixty (60) days in which to conduct discovery on the issues raised in the motion and affidavit. The court for good cause shown, may extend the time for discovery." §11-1-64(4). The court may, but need not, hold an evidentiary hearing to determine the propriety of dismissal. *Id.* As shown in the chart below, in many cases, the plaintiffs have not responded to the defendants' motions to dismiss at

all, nor have they asked for additional time to obtain discovery.[11]

The Court concludes that, in those instances where plaintiffs did not respond to the sellers' motions to dismiss, it is appropriate to grant the motions.  Accordingly, pursuant to §11-1-64, the sellers' motions are granted without prejudice, as set out in the chart below, and the sellers are dismissed as parties in those cases.

In those cases where the plaintiffs did respond, the responses include a request for more time to pursue discovery regarding whether the moving defendant meets the "innocent seller" qualifications.  The Court concludes these requests for more time are well-taken.  The plaintiffs in these cases shall have until March 1, 2006, to pursue discovery from the seller defendants related to the issues raised in the motions to dismiss and affidavits.  No additional time will be allowed.  On March 1, 2006, these plaintiffs shall file a brief on the merits in response to the motions to dismiss; failure to do so will lead to a grant of the motions, as unopposed.  The parties may then file responses and replies in the normal course.  Until that time, the Court reserves ruling on these motions to dismiss.[12]

The Court's rulings on all of these various motions are summarized below.

---

[11]  With regard to plaintiffs' failures to respond to motions to dismiss, it is even debatable whether the plaintiffs fully opposed Nordan Smith's 14 multi-case motions to dismiss, discussed above.  Plaintiffs did file an opposition to Nordan Smith's motion to dismiss in *Eiland v. Lincoln Electric Co.*, case no. 05-CV-17741 (*see* docket no. 29), and then belatedly filed a single response to the 14 motions on the master docket, simply adopting the *Eiland* opposition (*see* master docket no. 1486).  This single response leaves the reader unclear whether the plaintiffs meant to oppose all 14 of Nordan Smith's motions, or only to oppose dismissal in certain cases; the Court assumed the former.  In any event, the plaintiffs had earlier adduced evidence regarding their allegation that Nordan Smith had actual or constructive knowledge of a product defect, in the context of discussing fraudulent joinder.  The plaintiffs did not earlier adduce evidence similar in quantum or weight in connection with Capweld, Wesco, Airgas, or SWS.

[12]  Alternatively, plaintiffs may choose to stipulate to the immediate dismissal of these defendants without prejudice, consistent with the provisions of §11-1-64.

10

| Case No. | Case Caption | Docket No. of Motion (Filed By) | Opposed? | Ruling |
|---|---|---|---|---|
| 04-CV-18610 | Hendry v. Airgas-Gulf States, Inc. | 7 (Wesco) | No | **GRANTED** |
| 04-CV-18672 | Evans v. Airgas-Gulf States, Inc. | 7 (Wesco) | No | **GRANTED** |
| 04-CV-18771 | Matthews v. Airgas-Gulf States, Inc. | 7 (Wesco) | No | **GRANTED** |
| 04-CV-18835 | Winters v. Airgas-Gulf States, Inc. | 7 (Wesco) | No | **GRANTED** |
| 04-CV-18878 | Coutch v. Airgas-Gulf States, Inc. | 7 (Wesco) | No | **GRANTED** |
| 04-CV-18899 | Hutto v. Airgas-Gulf States, Inc. | 7 (Wesco)<br>8 (Capweld)<br>9 (Wesco) | No<br>No<br>No | **GRANTED**<br>**GRANTED**<br>**GRANTED** |
| 04-CV-18987 | Overland v. Airgas-Gulf States, Inc. | 5 (Wesco) | No | **GRANTED** |
| 04-CV-19052 | Cary v. Airgas-Gulf States, Inc. | 6 (Wesco) | No | **GRANTED** |
| 05-CV-17679 | Dixon v. Airgas-Gulf States, Inc. | 3 (Wesco) | No | **GRANTED** |
| 05-CV-17689 | Dixon v. Airgas-Gulf States, Inc. | 4 (Capweld) | No | **GRANTED** |
| 05-CV-17709 | Barnes v. A.O. Smith Corp. | 4 (Wesco)<br>5 (Capweld) | No<br>No | **GRANTED**<br>**GRANTED** |
| 05-CV-17712 | Frye v. Lincoln Elec. Co. | 4 (Wesco)<br>5 (Capweld) | No<br>No | **GRANTED**<br>**GRANTED** |
| 05-CV-17717 | Jackson v. A.O. Smith Corp. | 3 (Wesco)<br>4 (Capweld) | No<br>No | **GRANTED**<br>**GRANTED** |
| 05-CV-17741 | Eiland v. Lincoln Electric Co. | 3 (SWS)<br>4 (Airgas)<br>7 (Capweld)<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17742 | Rouse v. Lincoln Electric Co. | 3 (SWS)<br>6 (Capweld)<br>7 (Airgas)<br>21 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17743 | Christy v. Lincoln Electric Co. | 3 (SWS)<br>4 (Airgas)<br>7 (Capweld)<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |

| Case No. | Case Caption | Docket No. of Motion (Filed By) | Opposed? | Ruling |
|---|---|---|---|---|
| 05-CV-17744 | Rouse v. Lincoln Electric Co. | 3 (SWS)<br>6 (Capweld)<br>7 (Airgas<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17745 | Albritton v. Lincoln Electric Co. | 3 (SWS)<br>4 (Airgas)<br>7 (Capweld)<br>24 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17746 | Bailey v. Lincoln Electric Co. | 2 (SWS)<br>3 (Airgas)<br>5 (Capweld)<br>18 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17747 | Stallworth v. Lincoln Electric Co. | 3 (SWS)<br>5 (Capweld)<br>7 (Airgas)<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17748 | Broussard v. Lincoln Electric Co. | 3 (SWS)<br>4 (Airgas)<br>6 (Capweld)<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17749 | Chaney v. Lincoln Electric Co. | 3 (SWS)<br>4 (Airgas)<br>7 (Capweld)<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17750 | Pickich v. Lincoln Electric Co. | 2 (SWS)<br>4 (Capweld)<br>5 (Airgas)<br>18 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17751 | Hathorn v. Lincoln Electric Co. | 3 (SWS)<br>4 (Airgas)<br>7 (Capweld)<br>22 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17796 | Glenn v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |

| Case No. | Case Caption | Docket No. of Motion (Filed By) | Opposed? | Ruling |
|---|---|---|---|---|
| 05-CV-17805 | Holland v. Lincoln Electric Co. | 2 (Airgas)<br>5 (Capweld)<br>16 (SWS)<br>23 (Wesco) | Yes<br>Yes<br>Yes<br>Yes | reserved<br>reserved<br>reserved<br>reserved |
| 05-CV-17806 | Pates v. Airgas-Gulf States, Inc. | 3 (Wesco)<br>4 (Capweld)<br>5 (Wesco) | No<br>No<br>No | **GRANTED**<br>**GRANTED**<br>**GRANTED** |
| 05-CV-17808 | Gaskew v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17848 | Riley v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17880 | Riley v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17899 | Williams v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17907 | Norman v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17934 | Palmer v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17953 | Carter v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-17969 | McBride v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 05-CV-18161 | Crosby v. Airgas-Gulf States, Inc. | 3 (Capweld)<br>4 (Wesco) | No<br>No | **GRANTED**<br>**GRANTED** |
| 05-CV-18162 | Agee v. Airgas-Gulf States, Inc. | 3 (Capweld) | No | **GRANTED** |
| 03-CV-17000 | In re: Welding Fumes | 1143 (Airgas)[13] | No | **GRANTED** |

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley

**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**:  December 5, 2005

---

[13]  This motion, filed on the master docket, essentially "repeats" the request for dismissal filed by Airgas in all of the above-listed individual cases, plus seeks dismissal in a couple of other individual cases.

13

14