03cv17000zam-ord(100Cases).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: WELDING FUME PRODUCTS** : | |
| **LIABILITY LITIGATION** : | Case No. 1:03-CV-17000 |
| : | (MDL Docket No. 1535) |
| : | |
| : | JUDGE O'MALLEY |
| : | |
| : | **ORDER** |

On March 31, 2006, the Court entered a "*Case Administration Order*" which, among other things, set out the Court's conclusion that "certain case-specific discovery should commence" in this MDL. Order at 11 (docket no. 1724). The Court explained:

> In particular, the Court intends to identify, in the near future, a batch of 100 cases. Counsel for plaintiffs will promptly work to obtain medical authorizations from the plaintiffs in those cases, so that defendants may begin gathering the plaintiffs' medical records. The Court will also identify 15 cases within this batch of 100 cases. Counsel for the parties will then begin all case-specific discovery as to those 15 plaintiffs. The Court will endeavor to choose cases with a broad variety of diagnoses, plaintiffs' attorneys, and applicable states' law. The Court will conduct a status conference approximately 90 days after this case-specific discovery begins, to assess progress and determine a date by which a next wave of cases shall be designated for and begin their case-specific discovery.

*Id.* at 11-12 (footnotes omitted).

The Court now designates the first such 100-case batch. Attached to this Order is a list of 100 cases – spread across 19 plaintiffs' attorneys and 39 states – designated for medical records discovery. The parties will work to reach a joint agreement on the process of production.

In addition, the Court sets forth here certain instructions regarding the parties' initial discovery obligations on these 100 cases. As defendants have recently noted, at least two plaintiffs

in this MDL proceeding have, shortly before their trial was scheduled to begin, filed motions seeking to avoid or postpone their trials. These motions came after all parties spent substantial amounts of time and money preparing to litigate the cases before the undersigned.[1] Arguing that these plaintiffs caused defendants needlessly to suffer "enormous and unjustifiable expenses" for trial preparation, defendants earlier asked this Court to require plaintiffs "to pay defendants' fees and costs for any future trial candidates that plaintiffs decide not to pursue after defendants have begun affirmative discovery."[2] The Court declined to enter the requested Order, but concluded that defendants had a point:

> While the Court agrees that some steps must be taken to avoid similar circumstances in the future and that, at some point, sanctions in the form of cost shifting might be appropriately imposed on a plaintiff and/or his counsel, defendants' current proposal goes too far. Instead, in a future Order, the Court will impose case management obligations designed to avoid unnecessary cost or prejudice to defendants, by minimizing similar surprise revelations deep in the discovery process.

*Peabody v. Airco, Inc.*, case no. 05-CV-17678 (N.D. Ohio July 31, 2006) (docket no. 26 at 4).

The additional case management obligations to which the Court was referring are as follows. For each of the 100 cases designated with this Order, counsel for the plaintiff will scan carefully his client's medical records to determine whether those records reveal any issues suggesting that pursuit of the case to trial might be unwarranted. Counsel's medical records review will include a comparison of those records to his client's sworn fact sheet. Examples of issues that plaintiff's counsel should examine carefully include: (1) possible drug or alcohol abuse; (2) any other medical

---

[1] *See* docket no. 25 in *Peabody v. Airco, Inc.*, case no. 05-CV-17678 (N.D. Ohio) (defendants' reply brief regarding motion for discovery order, citing the *Peabody*, *Morgan*, and *Landry* cases).

[2] *Id.* at 2.

conditions, or exposures to toxins, that could cause symptoms similar to those allegedly caused by the welding fume exposure; (3) known genetic or familial susceptibility to movement disorders; (4) serious discrepancies between the medical records and the fact sheet; and/or (5) suggestions of excessive exaggeration or dishonesty.[3]

Following this medical records review, counsel for the plaintiff will (again) interview his client carefully to obtain information bearing on whether pursuit of the case to trial might be unwarranted; this interview must include an explanation to the client that making false statements under oath can carry substantial personal penalties, both monetary and immuring.

After plaintiff's counsel in each case has undertaken the review of medical records and client interview discussed above, plaintiff's counsel will either: (1) submit a letter to defense counsel certifying he has completed this process and believes in good faith that he and his client will pursue the matter to trial; or (2) move to dismiss his case or to withdraw his representation.  Plaintiff's counsel shall send these certification letters to defense counsel, or move to dismiss or withdraw, within 120 days of the date that the client's medical-records requests are submitted.

After this process has had sufficient time to unfold, the Court will designate 15 cases within

---

[3] That a given plaintiff may have any of these issues, of course, does not mean he may not proceed to trial.  The point is that plaintiffs' counsel's decision to pursue the matter to trial should be fully informed as early as possible, and the disclosure of all relevant information to defendants should occur, to the extent possible, before depositions begin.  Further, the Court is not requiring plaintiffs' counsel to *guarantee* there will be no late surprises or client revelations during the discovery process, but the Court is requiring plaintiffs' counsel to make a substantial effort early on to achieve this goal.

this 100-case batch for full, case-specific discovery.[4] The Court directs the parties to inform the Court when it appears the time for this designation is ripe.

As noted in the *Case Administration Order*, it is the Court's intention to put the 100 cases designated on the attached chart into a trial-ready posture as soon as reasonably possible, so that the cases may be set for trial in this Court or the transferor courts for final resolution.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: August 28, 2006

---

[4] Full case-specific discovery means, at this juncture, discovery related to: (1) all fact witnesses; (2) the plaintiff's diagnosing doctor; and (3) the doctor who performs the independent medical examination for defendants. The Court will discuss with the parties the scheduling of other expert discovery and other pretrial matters at the future status conference mentioned in the language quoted above from the *Case Administration Order*.