03cv17000zap-ord(DukeConsol).wpd

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: WELDING FUME PRODUCTS LIABILITY LITIGATION | : <br> : Case No. 1:03-CV-17000 <br> : (MDL Docket No. 1535) <br> : <br> : JUDGE O'MALLEY <br> : <br> : **MEMORANDUM AND ORDER** |

Plaintiffs move for consolidation of five separate cases for purposes of trial: (1) *Goforth v. Lincoln Elec. Co.*, case no. 06-CV-17217; (2) *Quinn v. Lincoln Elec. Co.*, case no. 06-CV-17218; (3) *Beheler v. Lincoln Elec. Co.*, case no. 06-CV-17204; (4) *Carriker v. Lincoln Elec. Co.*, case no. 06-CV-17205; and (5) *Steelman v. Lincoln Elec. Co.*, case no. 06-CV-17206.

For the reasons stated below, this motion (docket no. 1748) is **GRANTED in part**: the Court will consolidate for trial, to begin on October 30, 2006, the *Goforth* and *Quinn* cases. As to the other three cases, the Court will discuss further scheduling with counsel, with the goal of setting trial dates as soon as possible thereafter.

**I.     Procedural History**.

Beginning in early 2003, a number of plaintiffs around the country began filing lawsuits against various manufacturers, suppliers, and distributors of welding rod products, as well as related trade associations. The common theme of these lawsuits was that exposure to manganese in fumes given off by welding rods caused physical harm to the plaintiffs, and the defendants knew or should

have known that use of the welding rods caused these injuries.

The plaintiffs in one of these cases filed a motion with the Federal Judicial Panel on Multi-District Litigation ("MDL Panel"), seeking to consolidate and centralize all related federal lawsuits, pursuant to 28 U.S.C. §1407. MDL docket no. 1535. On June 23, 2003, the MDL Panel granted the motion, consolidating and transferring all related pending federal litigation to the Northern District of Ohio and assigning oversight of the MDL proceedings to the undersigned. There are currently about 3,500 individual cases within this MDL.

The Court and the parties agreed that the undersigned would preside over a number of "bellwether trials," the next one of which is scheduled to commence on October 30, 2006. Several months ago, the Court directed lead counsel for plaintiffs to select a particular case for this trial slot. On April 14, 2006, counsel for the plaintiffs requested they be allowed to select several cases to try at once, and moved to consolidate seven different lawsuits. Subsequently, plaintiffs' counsel pared this list down to the five cases listed above: *Goforth, Quinn, Beheler, Carriker,* and *Steelman*. These cases came to be called the "Duke Power Cases," because all five of the plaintiffs worked for the Duke Power Company.

Defendants objected to the idea of a consolidated bellwether trial and opposed the motion. On June 13, 2006, after full briefing, the Court held a hearing on the motion to consolidate, and took the matter under advisement. Specifically, the Court determined that, at that juncture, the parties had not yet undertaken sufficient discovery to fully understand the factual similarities and differences between the five cases, such as the degree of overlap of the plaintiffs' work history, medical diagnoses, and so on. The Court explained:

> So what I'm going to do is to order that the parties proceed on the assumption that they are working up all five cases for trial and they need to act as if all five cases

> might be tried together, and then I will meet with the parties at some time in September, after we've had an adequate opportunity to work these cases up and have a better sense of them, and determine how many of them will be tried.
>
> Somewhere between one and five of Mr. Thompson's clients who worked at Duke Power will be tried in that trial slot, and the question is whether it is one or five or two or three or four, but I think at this point, and the parties have said repeatedly that they could do multiple tracks in terms of preparing cases for trial and engaging in discovery, so I see no reason why we shouldn't do that now.
>
> So I want the parties to work the five cases up as if they were going to be tried together, but I will keep open the question of how many of them will ultimately be tried.

Hearing tr. at 2183 (June 6, 2006).

The parties proceeded to do full trial preparation for all five cases, including submission of expert reports and expert discovery.[1] After the bulk of discovery had occurred, the parties submitted supplemental briefs regarding the propriety of consolidation and, on September 7, 2006, returned to Court to present additional argument. Having considered carefully all of the facts and arguments presented, the Court concludes that consolidation for trial of two of the five Duke Power Cases is appropriate.

**II.     Analysis.**

**A.     Legal Standard.**

The question of whether two or more cases should be consolidated for trial is addressed by Federal Rule of Civil Procedure 42(a), which states:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the

---

[1] The effort undertaken by both sides to prepare for trial all five Duke Power Cases simultaneously has been significant. The Court compliments all attorneys involved for their commitment to shouldering this workload, to meeting the Court's deadlines, and, especially, to doing so with a minimum of discovery disputes.

      actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  "Whether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court, and the court's decision is reviewed for abuse of discretion." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993).

      A trial court faced with the decision of whether to consolidate lawsuits must consider "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.* (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *cert. denied*, 460 U.S. 1102 (1983)).  The most important factor, however, is that "considerations of convenience may not prevail where the inevitable consequence to [either] party is harmful and serious prejudice." *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983)*, cert. denied*, 464 U.S. 1040 (1984).  "The systemic urge to aggregate litigation must not be allowed to trump [the Court's] dedication to individual justice, and [the Court] must take care that each individual plaintiff's – and defendant's – cause not be lost in the shadow of a towering mass litigation." *In re: Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2nd Cir. 1992).  *See Cantrell*, 999 F.2d at 1011 ("Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage.  Conservation of judicial resources is a laudable goal.  However, if the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny.").

      In the context of products liability and occupational disease cases, numerous courts have

examined the "Maryland Factors" to help "strike the appropriate balance as to consolidation *vel non*." *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350-51 (2nd Cir. 1993) (quoting *In re: All Asbestos Cases Pending in the United States District Court for the District of Maryland* (D. Md. Dec. 16, 1983) (en banc) (unreported)).  These criteria include assessment of whether the plaintiffs: (1) had a common worksite; (2) had a similar occupation; (3) had a similar time of exposure; (4) have a similar type of disease; (5) are living or deceased; (6) share a similar discovery status; and (7) are represented by the same counsel. *Id.* "[F]actors 1-[5] are far more important than identity of counsel and progress of discovery. [Maryland Factors] 1-[5] go to the central issue of commonality, while factors 6-7 go solely to convenience, and [often] the convenience of only one side." *In re: Repetitive Stress Injury Litigation*, 11 F.3d 368, 374 (2nd Cir. 1993).

As discussed below, although the Court has not found any case addressing this issue, an eighth important factor is whether the law applicable to all plaintiffs is the same. That is, even if all of the Maryland Factors weigh in favor of consolidation, a requirement that the Court or a jury apply different legal standards to the different cases may present an excessive risk of prejudice and confusion, such that consolidation is not appropriate.

### B. Application.

As might be expected, counsel for the five Duke Power plaintiffs undertakes an inventory of the many similarities the plaintiffs share, while counsel for the defendants concentrates on identifying their differences. To some extent, the question of whether the plaintiffs present similar or dissimilar issues of fact depends on the degree of scrutiny used. For example, in examining the fourth Maryland Factor – whether the five plaintiffs have a similar type of disease – the plaintiffs

note that all five have received diagnoses by their experts of cardiac abnormalities, neuro-cognitive deficits, and manganism.  Defendants, however, point to diagnostic differences identified by *their* experts, and to idiosyncracies in the plaintiffs' medical and family histories and symptomatology. For example, while plaintiffs Goforth and Steelman each have a diagnosis from their own experts of manganism, defense experts opine that Goforth's trembling is actually caused by Essential Tremor, while Steelman's is actually caused by tobacco and caffeine use, physiologic tremor, and diabetes.  Defendants further note that Goforth has no family history of movement disorders, while Steelman's father has Parkinson's Disease; Steelman is a teetotaler, Goforth is not; and so on.  Thus, while it is fair to say that all five plaintiffs apparently have a broadly similar medical problem – a movement disorder – the defendants argue that the types and causes of the movement disorders they have are different.

Similarly, in examining the first and third factors – whether the plaintiffs had a common worksite and had a similar period of exposure to welding fumes – the plaintiffs note that all five: (1) worked for Duke Power; (2) were exposed to welding fumes for at least 25 years; (3) were exposed to welding fumes at Duke Power job sites for at least 17 of those years; and (4) worked at a minimum of six common job sites, such as the Duke Power Catawba, Oconee, and McGuire Nuclear Power Plants.  Defendants, however, focus on the differences between plaintiffs, noting that one or more of them: (1) had as many as 9 other employers in addition to Duke Power; (2) worked at as many as 18 total job sites, 8 of which were not Duke Power sites; and (3) used different welding products and processes (e.g., Steelman welded with stick 75% of the time and wire 25% of the time, while Goforth had closer to a 50/50 ratio).  Thus, the work experiences of the five plaintiffs are of the same genus, but not the same specie.

Conceding, as they must, that the remaining Maryland Factors generally favor plaintiffs – that is, all five plaintiffs had a similar occupation,[2] are living, share the same discovery status, and are represented by the same counsel – defendants still argue that the prejudice they would suffer if all five cases are consolidated would be extreme. Defendants assert that a consolidated trial of all five cases would require a jury to parse properly the interplay of 15 parties, 60 fact witnesses, a dozen welding products, different respirator usage levels, different fume exposure levels, different histories of exposure to warnings, and highly individualized medical histories, symptoms, and diagnoses. Not only is this task virtually impossible, defendants argue, but the result will necessarily work to the defendants' prejudice because the plaintiffs will "enjoy[] the practical advantage of being able to litigate not on behalf of themselves but on behalf of a 'perfect plaintiff' pieced together for litigation." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). The case law does suggest that, depending greatly on the particular circumstances, the prejudice and confusion attendant to consolidation of too many cases, even though they share

---

[2] Defendants do note that, while four of the five Duke Power plaintiffs were welders, Carriker was a welder's helper.

substantial basic similarities, may be undue.[3]

Finally, defendants argue that the level of confusion that would occur if the Court were to consolidate all five Duke Power cases would be exacerbated even further by choice of law principles, which suggest that the claims of three of the plaintiffs (Beheler, Carriker, and Steelman) should be adjudicated under the law of North Carolina, while the claims of the other two plaintiffs (Goforth and Quinn) should be examined under South Carolina law. A full analysis of the state law that should apply to each plaintiff is complicated, and – for the reasons explained below – ultimately unnecessary. It suffices to note that defendants' position has some support, which they mustered using the following chart.

---

[3] While, for a number of reasons, the cases upon which defendants rely are distinguishable from the circumstances presented here, the case law cited by defendants includes: (1) *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So.2d 31, 48 (Miss. 2004) ("In the case sub judice, the jury was presented the testimony of 43 witnesses. Several depositions of doctors were either read into the record or were viewed via videotape by the jury. The jury was asked to keep up with prior medical histories, injuries alleged to be related to [the drug] Propulsid, [heart-beat] intervals and numerous other medical evidence as it related to ten unique plaintiffs. From the record before us, there can be little doubt that this method of presentation of evidence created unfair prejudice for the defendants by overwhelming the jury with this testimony, thus creating a confusion of the issues."); and (2) *Cantrell*, 999 F.2d at 1011 ("The potential for prejudice resulting from the consolidation of a cancer case with a non-cancer case is obvious. Evidence relevant only to the causation of one plaintiff's cancer may indicate to the jury that the other plaintiff will likely develop cancer in the future. Even where the plaintiffs share similar work histories and suffer from other similar conditions as they do in this case, the trial court must carefully assess the risk of prejudice to the defendant before consolidating cancer and non-cancer cases. * * * Once the *Marple* case was matched with the *Cantrell* case, the potential for prejudice resulting from a possible spill-over effect of evidence . . . case was obvious.").

| Plaintiff | Welding Fume Exposure: Where | Last Welding Fume Exposure: Where | Domicile |
|---|---|---|---|
| Beheler | NC, SC | NC | NC |
| Carriker | NC, SC | NC | NC |
| Quinn | NC, SC | **SC** | **SC** |
| Goforth | Mostly SC | **SC** | **SC** |
| Steelman | Mostly NC | NC | NC |

Given the allegations that the plaintiffs' injuries developed over time, and thus did not occur in a single state, defendants argue that the two right-most columns should control which law is applicable to each plaintiff. *See Solly v. Manville Corp. Asbestos Disease Fund*, 1992 WL 125386 at *3 (6th Cir. June 8, 1992), *cert. denied by Owens-Illinois, Inc. v. Roby*, 506 U.S. 954 (1992) (noting, in similar circumstances, that under Ohio choice-of-law analysis, the state where the "last injurious exposure" occurred was an important factor); *Morgan v. Biro Manufacturing Co.*, 15 Ohio St.3d 339, 474 N.E.2d 286, 289 n.5 (per curiam) (1984) (noting that an important factor in Ohio choice-of-law analysis is the domicile of the parties at the time of suit) (quoting 1 *Restatement of the Law 2d, Conflict of Laws* §145 at 414).

    Plaintiffs originally argued that the law of South Carolina should apply to all five of the Duke Power plaintiffs, because South Carolina is the state where the most egregious welding fume exposures occurred. As noted in *Solly*, however, this is not a trump factor. *See Solly*, 1992 WL 125386 at *2 (applying Ohio law even though "[t]he evidence in this case indicated that Solly's alleged exposure to asbestos in Ohio was less in duration and intensity than his alleged exposure in New York"). In any event, the Court need not fully determine this issue, because the parties *agree*

9

that South Carolina law applies to the claims of Goforth and Quinn.[4]  Together with (1) the Court's conclusion that *some* level of consolidation is appropriate, and (2) the Court's reluctance to consolidate all five Duke Power cases because of the risk of jury confusion, the choice-of-law factor leads the Court easily to the determination that the motion for consolidation should be granted as to the *Goforth* and *Quinn* cases only.

To explain, the Court certainly agrees with plaintiffs that some level of consolidation is appropriate.  It is beyond dispute that all five of the Duke Power Cases present common questions of law and fact.  The Court's experience in presiding over other Welding Fume trials reveals that one of the most important issues of fact is the plaintiffs' employer's health and safety policies and procedures – probably a third of the proofs at the last bellwether trial (and a similar proportion of the parties' pretrial motions) went to this question.  In the Duke Power Cases, the evidence on this matter will be virtually the same for each plaintiff.  Likewise, a large percentage of trial time in these cases is devoted to presentation of "background" evidence related to how the welding process works, and how welding fume exposure affects human health; this evidence will have to be adduced in each case.  Given the common issues of fact and law, it is doubtless that consolidation will decrease the total burden on the parties and witnesses, help alleviate the strain on judicial resources, and lead to a speedier resolution of the several lawsuits.

The Court also agrees with the defendants, however, that consolidation of all of these particular cases presents a risk of confusion and prejudice.  Simply, consolidation would be to ask

---

[4]  Some question remains regarding choice of law as to Beheler, Carriker, and Steelman. But plaintiffs have more recently suggested, informally, that they might not choose to oppose application of North Carolina law to the *Beheler, Carriker,* and *Steelman* cases in a separate proceeding or proceedings.

a jury to keep track of a lot. While the plaintiffs have suggested a variety of methods to overcome the risk of confusion, the Court remains concerned that these methods will not be sufficiently mitigating.

Thus, the Court chooses – at this juncture – to take a conservative approach and consolidate for trial two of the Duke Power cases: *Goforth* and *Quinn*. Because the parties agree that these cases both involve application of South Carolina law, complicated choice-of-law issues are avoided and the jury will apply only one set of legal standards.[5] Because there are only two plaintiffs, the number of witnesses is limited and the concern about spill-over of evidence is allayed. The Court is confident that a jury can parse properly the evidence at a two-plaintiff Duke Power trial, and that the risk of prejudice to the defendants is kept low.

Indeed, the Court believes that, especially in welding fume cases where plaintiffs share most of the Maryland Factors, the same balance would probably hold true at a consolidated trial involving three plaintiffs, and perhaps even five or more. This would be especially likely where the plaintiffs work for a single employer at a single location during most of their careers. The exact number of plaintiffs where the risk of confusion and prejudice outweighs the benefits of consolidation cannot be known with precision, of course, although the *Goforth* / *Quinn* trial will surely prove instructive.

In any event, the minimal level of consolidation the Court orders here is clearly appropriate.

---

[5] The Court notes in passing that the applicability of different states' laws in different cases does not *automatically* shift the balance in favor of non-consolidation. If the legal standards in the different states are similar, or the dissimilarities are easily kept distinct, then the choice-of-law factor does not necessarily suggest an increased risk of confusion. In this case, the legal standards of North Carolina and South Carolina are materially different (e.g., North Carolina employs a contributory negligence scheme, while South Carolina employs a comparative negligence standard). Although plaintiffs suggest this difference in legal standards can be addressed safely through jury instructions, such that there will be no risk of confusion, the Court chooses not to test this theory in the first consolidated trial.

The trial slated for October 30, 2006 will proceed with plaintiffs Goforth and Quinn presenting their cases together.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley  
**KATHLEEN McDONALD O'MALLEY**  
**UNITED STATES DISTRICT JUDGE**

**DATED**: October 5, 2006