03cv17000zaw-ord(Next3Trials).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: WELDING FUME PRODUCTS LIABILITY LITIGATION | : :  Case No. 1:03-CV-17000 :  (MDL Docket No. 1535) : :  JUDGE O'MALLEY : :  **MEMORANDUM AND ORDER** : |

Defendants move for expedited entry of an Order determining the identity of the next bellwether trial plaintiffs (docket no. 2041). The motion is **GRANTED in part**, as follows. For the reasons stated below, the next three bellwether trials will be:

• *Tamraz v. Lincoln Elec. Co.*, case no. 04-CV-18948; trial to begin on **November 5, 2007.**

• *Jowers v. Airgas-Gulf States, Inc.*, case no. 07-WF-17010; trial to begin on **January 28, 2008.**[1]

• plaintiff to be determined by the Court; trial to begin on **July 14, 2008.**

\*     \*     \*     \*     \*

With the instant motion, defendants ask the Court to set up a process to choose *randomly* the next bellwether trial candidates. Defendants complain that the MDL cases tried so far have been almost entirely of plaintiffs' choosing, and therefore object to plaintiffs having any role in identifying the next trial candidates. Defendants ask, instead, that the next bellwether trial candidates be chosen randomly by

---

[1] The precise location and timing of this trial remain subject to administrative approvals.

the Court, urging that this process will lead to a more representative cross-section of trial results.

The Court finds defendants' motion well-taken only in part. After notifying the parties that the Court intended to hold an MDL trial in November of 2007 and/or February of 2008, plaintiffs responded with the request that the next MDL trial be the *Jowers* case, in February, and that the case be remanded to the Mississippi transferor court for trial. Among other points, the plaintiffs asserted that *Jowers* was a good bellwether case because: (1) Jowers was an employee of Ingalls Shipyard; (2) his claims arise under Mississippi law; and (3) pursuant to 28 U.S.C. §1407, his case must be remanded to Mississippi district court for trial in front of a Mississippi jury. All of these characteristics are shared by many other MDL plaintiffs. The Court concludes that the *Jowers* case will be instructive in many respects to the Court and all parties, and is therefore a good choice for a bellwether trial. That plaintiffs chose *Jowers* does not make the case less instructive.[2]

On the other hand, defendants are correct that a series of trials of cases all picked by plaintiffs

---

[2] The Court must also note that plaintiffs offered to make *Jowers* more representative and more meaningful by agreeing "to having Mr. Jowers' case bind all Ingalls welders whom we represent with respect to such issues as adequacy of warnings, negligence, sophisticated user defense, and punitive damages (should they be awarded, and if so, in what proportion to the compensatory damages, if any, i[n] any tried case)." Letter to Court from Don Barrett (May 8, 2007). Defendants chose to construe this offer as an informal request to certify an issues class, and responded that "it would not be appropriate for the Court to consider plaintiffs' proposal – nor could defendants fully respond to it – unless and until plaintiffs file a motion for class certification fully demonstrating the purported basis for their contention that the claims at issue satisfy the requirements of Rule 23." Letter to Court from Stephen Harburg (May 17, 2007). Regardless of whether defendants are correct, it is clear that plaintiffs are serious about seeking meaningful and representative trials.

*might* provide less than a full view of the strengths and weaknesses of the parties' positions.[3] Accordingly, after plaintiffs proposed the trial of *Jowers* in Mississippi in February of 2008, the Court informed the parties that: (1) it would also try an MDL case in Cleveland in November of 2007; and (2) given the relatively short period remaining before a November trial, the case should be one where some case development has already occurred, such as one of the 100 cases that previously were chosen randomly by this Court for medical records discovery. *See* docket nos. 1888, 2031.[4] Plaintiffs responded by requesting trial of the *Tamraz* case. The claims filed by Tamraz arise under California law, which furthers the Court's oft-stated desire to try cases from different jurisdictions (which have different product liability laws).

Even though it was defendants who earlier suggested choosing the November trial candidate from the cases identified in the 100-case pool, defendants now object that allowing plaintiffs to choose *Tamraz* from this pool (instead of picking randomly) gives plaintiffs, yet again, their choice of bellwether trial candidate – and that *Tamraz* will, therefore, not be instructive.[5]

The Court disagrees. First, plaintiffs have stated their strong preference to choose a November trial

---

[3] As defendants note, the purpose of a series of bellwether trials is to "produce a sufficient number of representative verdicts" to "enable the parties and the Court to determine the nature and strength of the claims, whether they can fairly be developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis." Manual for Complex Litigation Fourth §22.315 at 360 (2004). The defendants' argument that the trial results so far obtained are neither representative nor helpful in assessing settlement value, because the plaintiffs are "cherry-picking" their best cases, might have more weight if the defendants had not won all of those cases.

[4] To be more accurate, the Court chose the 100 cases randomly, but with an eye toward ensuring the cases were spread across different plaintiffs' counsel, transferor courts, and applicable law.

[5] Defendants also assert that the cases most easily meeting the requirement that some discovery has already occurred are the three "Duke Power" cases that were not tried. *See* docket no. 1921 (after discovery had proceeded on five "Duke Power" cases, choosing two to consolidate for trial). Defendants argue in passing that, if the plaintiffs do not agree or choose to try these three "Duke Power" cases as the next bellwether cases, the three cases should be dismissed with prejudice. The Court will consider this request only if made formally, in a separate motion, after full briefing.

candidate from outside the pool of 100 cases previously designated for medical records discovery. Having been directed by the Court to choose a plaintiff from the previously chosen 100-case random pool, the "randomness factor" sometimes connected to bellwether trials is at least partially served. Further, plaintiff Tamraz was diagnosed with Manganism by a doctor other than Paul Nausieda, whom defendants have accused of soft diagnostic techniques. The Court believes *Tamraz* could be highly instructive because it presents different facts, diagnoses, diagnosticians, and applicable law than have been presented in other bellwether MDL trials.

In sum, defendants' arguments are not without merit, but they do not convince the Court that the cases suggested by plaintiffs for the next two bellwether trials – *Tamraz* and *Jowers* – will be anything other than highly instructive to the parties and the Court regarding many issues, *including* "what range of values the cases may have if resolution is attempted on a group basis." Manual for Complex Litigation Fourth §22.315 at 360 (2004). To ensure the "randomness factor" is fully and completely fulfilled in the next open MDL trial slot after *Tamraz* and *Jowers*, the Court will chose, from the 100-case pool, the case to be tried in July of 2008.

Individual case management orders will issue separately for all three trial slots.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: June 6, 2007