03cv17000zay-ord(DiscoveryETC).wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: WELDING FUME PRODUCTS** : | |
| **LIABILITY LITIGATION** : | **Case No. 1:03-CV-17000** |
| : | **(MDL Docket No. 1535)** |
| : | |
| : | **JUDGE O'MALLEY** |
| : | |
| : | <u>**DISCOVERY ORDER**</u> |
| : | |

This Order addresses a number of issues related to discovery and scheduling in this MDL, and is intended to both clarify existing obligations and impose certain new obligations upon the parties.

**I.      Continuing Disclosure Obligation**.

Federal Rules of Civil Procedure 26(a)(1-3) describe certain information that must be disclosed in discovery, even absent a request by an opposing party. Rule 26(b)(1) then states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition," and adds that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Further, Rule 26(e) explains, essentially, that all parties – both plaintiffs and defendants – have a *continuing obligation* to supplement their earlier discovery responses and to disclose relevant information in discovery.

At various times, the parties have approached the Court with discovery disputes that were resolved by simple reference to the continuing discovery obligation set out in Rule 26(e). Also, the resolutions of these discovery disputes have sometimes required guidance regarding the meaning and scope of the phrase "relevant to the claim or defense of any party."

Accordingly, the Court takes this opportunity to remind all parties of their continuing obligation of disclosure in discovery, and also to set forth the following observations regarding whether a particular piece of information is "relevant to the claim or defense of any party."[1]

**All parties in this litigation have a continuing obligation to disclose non-privileged, relevant information,** *regardless of how obtained*, **if:**

**(1)** **it would tend to undermine the disclosing parties' contentions, or it would support the non-disclosing parties' contentions;**

**(2)** **it identifies any person whom, if their potential testimony were known, a party might reasonably want to depose or call as a witness;**

**(3)** **it identifies any document or thing which, if its identity or content were known, a party might reasonably have an interest in viewing;**

**(4)** **it is likely to have an influence upon or affect the outcome of a claim or defense;**

**(5)** **a party might reasonably want to consider it in the preparation, evaluation, or trial of a claim or defense; or**

**(6)** **reasonable and competent counsel would consider knowledge of it reasonably necessary to prepare, evaluate, or try a claim or defense.**

The parties should construe liberally all of these descriptions.

## II. Discovery of Funding of Studies and Payments to Experts.

During the course of this litigation, the parties and their experts have frequently referred, both in

---

[1] These observations are borrowed, in large part, from the United States District Court, Eastern District of Texas, Local Rule CV-26(d) (Feb. 12, 2007).

motions and at trial, to literally hundreds of articles and studies touching upon the medicine, science, and epidemiology of exposure to manganese and welding fumes. The parties' experts and attorneys cite and discuss these articles and studies at trial, and the experts rely upon them to form the opinions they express to the Court and the jury.

The Court has repeatedly been called upon to resolve discovery disputes related to the disclosure of whether any party (or any entity or group with an interest in this or related litigation, including cohorts of state-court attorneys) has supplied funding (directly or indirectly) to an author of these articles and studies. At one point, the parties had apparently reached an agreement regarding the scope of disclosure they required of each other on this issue, but that agreement has not proved entirely workable. Further, the Court has come to the conclusion that the ends of justice are best served if the parties' level of disclosure regarding the sources of funding of these articles and studies is full and complete, regardless of whether evidence related to such funding is ultimately deemed admissible at trial.

Accordingly, the Court now rules as follows. All parties to this litigation – both plaintiffs and defendants – must disclose the fact of, and the amounts of, payments they made, either directly or indirectly,[2] to any entity (whether an individual or organization) that has authored or published any study, article, treatise, or other text upon which any expert in this MDL litigation relies, or has relied. This

---

[2] "Indirect payments" include, for example, payments *made* by: (a) counsel for a party; (b) any attorney who has made an appearance in any case that was or is in this MDL; and (c) any organization to which the party belongs or has given money. Indirect payments also include, for example, payments *received* by an entity that employs an author of a study.

**Liaison counsel are directed to communicate with other attorneys who have made an appearance in any case that was or is in this MDL, to ensure those attorneys are aware of these discovery obligations.**

obligation of disclosure is not limited to "quid pro quo" payments.[3]

The Court understands that this discovery obligation is wide-ranging and may require of the parties some effort and time to obtain a complete response, but the Court is not inclined to supply any limiting language regarding this obligation at this stage. The parties must make all reasonable efforts to comply. Only once the parties' disclosures are complete will the Court assess the admissibility of any information disclosed.

These obligations are imposed upon the parties and all counsel in this MDL. Thus, the parties *and* counsel must make reasonable inquiry of their own books and records, and of any experts retained in this litigation,[4] and must also disclose any information about which they otherwise become aware from *any* source. This obligation does *not*, however, either require or permit the issuance of subpoenae to third-party professionals or experts for the mere purpose of ferreting out the existence or absence of the types of payments outlined in this Order. The disclosures required should be revealed primarily by reference to the parties' and counsel's and experts' own records, and their personal knowledge.

**III.    Sanction.**

If a party seeks to introduce a piece of evidence at any trial in this MDL, but has not timely complied with these discovery obligations, the Court will be *strongly* inclined not to allow that party to

---

[3] Thus, for example, if a party paid $10,000 to a neurologist, Dr. Jones, to obtain his expert opinion in an unrelated and completely different piece of litigation (say, an opinion regarding the extent of a plaintiff's head injuries in a car crash), and Dr. Jones also wrote an article on welding fume exposure but received no payment from any party *for that article*, the fact of the $10,000 payment must still be disclosed.

[4] The parties should inquire of both testifying and consulting experts. Further, the parties should also ask those experts about their knowledge of the funding relationships of any authors or publishers of any "reliance" materials.

introduce that piece of evidence.  If a party fails timely to comply with these obligations to produce a piece of evidence that an opposing party can show it would have wanted to introduce at trial, the Court will consider sanctions up to and including the entry of judgment against the non-producing party.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley<br>
**KATHLEEN McDONALD O'MALLEY**<br>
**UNITED STATES DISTRICT JUDGE**

**DATED**: December 13, 2007