03cv17000zaz-ord(CAO-2).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: WELDING FUME PRODUCTS LIABILITY LITIGATION | : :  Case No. 1:03-CV-17000 :  (MDL Docket No. 1535) : :  JUDGE O'MALLEY : :  **SECOND** :  **CASE ADMINISTRATION ORDER** : |

This Order addresses several administrative issues in this MDL. For the reasons and to the extent stated below:

• as discussed in section I, the Court now **ORDERS** certain plaintiffs to file their required certifications, as directed earlier in the "*First 100-Case Order*" (docket no. 1888).

• as discussed in section II, the Court **CHOOSES** the case of *Byers v. Lincoln Elec. Co.*, case no. 04-CV-17033, for the next MDL trial, to take place in the Northern District of Ohio and to begin on July 21, 2008;

• as discussed in section III, defendants' motion for entry of a supplemental Case Administration Order (docket no. 2080) is hereby **GRANTED in part**.

• as discussed in section IV, Defendants' motion to alter or amend dismissal orders (docket no. 2095) is **conditionally GRANTED.**

• as discussed in section V, defendants' motion to dismiss the "Duke Power cases" for failure to prosecute (docket no. 2049) is **DENIED, without prejudice.**

• as discussed in section VI, the *Steele* plaintiffs are directed to submit a full and final position

statement, as first directed in the Court's Order dated September 14, 2007 ("*Medical Monitoring Order*") (docket no. 2077).

## I. Plaintiffs' Counsel's Certifications.

On August 28, 2006, the Court entered an Order identifying a batch of 100 cases for medical records discovery. *See* docket no. 1888 ("*First 100-Case Order*").[1] The Court ordered counsel for the plaintiffs in these 100 cases to review the medical records discovery, meet with their clients, and then determine whether the case was one which counsel and client fully believed should go to trial. Specifically, the Court ordered:

> After plaintiff's counsel in each case has undertaken the review of medical records and client interview discussed above, plaintiff's counsel will either: (1) submit a letter to defense counsel certifying he has completed this process and believes in good faith that he and his client will pursue the matter to trial; or (2) move to dismiss his case or to withdraw his representation. Plaintiff's counsel shall send these certification letters to defense counsel, or move to dismiss or withdraw, within 120 days of the date that the client's medical-records requests are submitted.
> After this process has had sufficient time to unfold, the Court will designate 15 cases within this 100-case batch for full, case-specific discovery. The Court directs the parties to inform the Court when it appears the time for this designation is ripe.

*First 100-Case Order* at 3 (footnote omitted).

The process that the Court envisioned, however, has not developed entirely as planned. Following medical records discovery in the designated 100 cases, the parties discovered that a "second round" of medical records discovery was required as to some of the plaintiffs, because the "first round" revealed the existence of additional medical providers.[2] In addition, despite the Court's Order requiring plaintiffs to

---

[1] The Court later amended the *First 100-Case Order*, designating replacement cases after some of the original 100 cases were dismissed. *See* docket nos. 1978, 2031.

[2] Most of the "second round" medical records discovery was requested by defendants.

2

"send . . . certification letters to defense counsel, or move to dismiss or withdraw, within 120 days of the date that the client's medical-records requests are *submitted*," *id.* (emphasis added), plaintiffs counsel asked defendants to allow them, instead, to "certify or dismiss" within 120 days of medical records *receipt*, and to further allow extension of the deadline to 120 days after *second-round* medical records *receipt*. Plaintiffs' counsel explained to defendants that counsel could not reasonably be expected to review the medical records, meet with their clients, and undertake the "certify-or-dismiss" analysis until full records discovery was completed. In response, defendants agreed only to extend the deadline to 120 days after a second-round medical records *request*, if any. Neither plaintiffs nor defendants asked the Court for a modification of the obligations set out in the *First 100-Case Order*. Further, no party has informed the Court that the time has become ripe for "full, case-specific discovery" in 15 of the 100 cases. *Id.*

Clearly, the medical records discovery process is taking longer than anticipated. According to a chart created by defendants, however, medical records discovery is complete in at least 83 cases. Further, even using the plaintiffs' deadline, the date 120 days after second-round medical records *receipt* has already passed in almost all of these cases. As to these cases, there is no excuse for plaintiffs not completing their "certify-or-dismiss" analysis.

Accordingly, the Court rules as follows. First, the Court hereby amends the *First 100-Case Order* to state that **Plaintiffs' counsel shall send the certification letters to defense counsel, or move to dismiss or withdraw, within 60 days of the date that: (1) the client's second-round medical records are received, or (2) defendants notify plaintiffs' counsel that they do not intend to pursue a second**

3

**round of medical-records discovery.**[3]

Second, as to any case where this deadline has already passed, plaintiffs' counsel shall send the certification letters to defense counsel, or move to dismiss or withdraw, **within 60 days of the date of this Order.**

## II.     Next MDL Trial.

On June 6, 2007, the Court entered an Order (docket no. 2043) setting trial dates for the next three bellwether trials. The first two cases set for trial were *Tamraz v. Lincoln Elec. Co.*, case no. 04-CV-18948, and *Jowers v. Airgas-Gulf States, Inc.*, case no. 07-WF-17010. The Court explained that the third case would be a "plaintiff to be determined by the Court," with trial to begin on July 14, 2008. Order at 1. Further, the Court stated it would choose this plaintiff "from the 100-case pool," *id.* at 4, referring to the 100 cases the Court had previously chosen randomly for medical records discovery in the *First 100-Case Order*.

As noted above, the pace of certification or dismissal by plaintiffs' counsel has been slow. As of this date, in only three cases has plaintiffs' counsel certified that he "believes in good faith that he and his client will pursue the matter to trial." *Id.* Accordingly, the Court is forced to choose from only these three cases ("certified cases") the next bellwether plaintiff. In all three of these certified cases, the plaintiff filed

---

[3] The parties are directed to reach an agreement regarding notifications to each other of when medical records are requested, received, and so on. The Court's intent is to require plaintiffs' counsel to send the certification letters, or move to dismiss or withdraw, within 60 days of completion of second-round medical records discovery, or within 60 days of completion of first-round medical records discovery if there is no second round. To the extent plaintiffs or defendants request *third-round* medical records discovery for a given case, this will not change any deadlines absent agreement by defense counsel or good cause shown.

his complaint in the Northern District of Ohio, and his counsel is The Kaiser Firm.[4]

The plaintiffs designated in the *First 100-Case Order* were chosen randomly.[5] In addition, the Court has chosen randomly from the three certified cases the next bellwether plaintiff: Eddie Byers. This ensures complete fulfillment of the "randomness factor" sought by defendants. *See* Order at 4 (docket no. 2043) (June 6, 2007) (summarizing defendants' argument that bellwether cases should be chosen randomly).[6]

Accordingly, the case of *Byers v. Lincoln Elec. Co.*, case no. 04-CV-17033, will proceed to trial on July 21, 2008.[7]

---

[4] The three cases are: (1) *Ackerman v. Lincoln Elec. Co.*, case no. 05-CV-19285; (2) *Byers v. Lincoln Elec. Co.*, case no. 04-CV-17033; and (3) *Campbell v. Lincoln Elec. Co.*, case no. 05-CV-18835. In all three cases, the plaintiffs allege that venue is proper in the Northern District of Ohio.

In the *First 100-Case Order*, the Court adopted, in large part, defendants' suggestions that various mechanisms be employed to winnow non-meritorious, "make-weight" cases from the larger MDL mass of cases. The Court had expected, by now, that the plaintiffs would have certified a much larger number of cases, and that the defendants would have informed the Court that the time had come for "full, case-specific discovery" in 15 of the 100 cases. The winnowing process has not proceeded as quickly as the parties predicted, however, so the Court is forced to choose the next bellwether trial from the three cases listed, rather than from a larger pool of 15 or more. In light of the other directives contained in this Order, the pool of certified cases from which subsequent bellwether trials will be chosen should be much larger.

[5] "To be more accurate, the Court chose the 100 cases randomly, but with an eye toward ensuring the cases were spread across different plaintiffs' counsel, transferor courts, and applicable law." *See* docket no. 2043, Order at 3 n.4 (June 6, 2007).

[6] According to the Notice of Diagnosis filed by Mr. Byers (docket no. 13), he was diagnosed at a screening by Dr. Nausieda. Thus, defendants' desire for another bellwether trial of a "Screening-Plaintiff," discussed below in section III, is also met.

[7] In its Order dated June 6, 2007 (docket no. 2043), the Court stated the third bellwether trial would begin on July 14, 2008. Subsequent events have forced the Court to move the trial date back one week.

### III. Supplementation of the Case Administration Order.

In its Order dated March 31, 2006 (docket no. 1724) ("*First Case Administration Order*"), the Court established a number of procedural mechanisms designed to streamline the administration of this Multi-District Litigation, resolve certain recurring legal issues, and bring all of the cases in the MDL to a trial-ready posture more quickly (or determine they are not amenable to trial). In their recent motion to supplement the *First Case Administration Order*, defendants assert that additional streamlining is both possible and necessary. Specifically, defendants "move the Court for an Order requiring immediate medical records discovery in the 632 cases in which plaintiff was diagnosed through plaintiffs' counsel's screening process." Motion at 1. Defendants assert that: (1) about 90 percent of the cases currently pending in this MDL were filed by plaintiffs who were diagnosed at a medical screening sponsored by plaintiffs' counsel ("Screening-Plaintiff");[8] (2) of the nine plaintiffs designated for bellwether trial, only two were Screening-Plaintiffs; (3) of the four plaintiffs that have actually gone to trial, only one was a Screening-Plaintiff;[9] and (4) plaintiffs have taken pains to avoid designation of Screening-Plaintiffs for trial. Defendants argue that the upshot of these statistics is that the bellwether trial process has not been representative of the larger MDL. By requiring immediate medical records discovery in all 632 cases

---

[8] Specifically, a "Screening-Plaintiff" is one who was diagnosed by Dr. Paul Nausieda or his associates, Katherine Widnell and Juan Sanchez-Ramos. There are additional plaintiffs who were screened by Dr. Michael Swash, but the defendants do not include these plaintiffs in their 90 percent statistic, nor suggest their cases be made subject to additional administrative procedures.

[9] The nine plaintiffs who have been designated for trial, and their status, are as follows: (1) Charles Ruth, not a Screening-Plaintiff, case settled; (2) Dewey Morgan, not a Screening-Plaintiff, case dismissed before trial; (3) Scott Landry, Screening-Plaintiff, case dismissed before trial; (4) Ernesto Solis, Screening-Plaintiff, case tried to defense verdict; (5) Darwin Peabody, not a Screening-Plaintiff, case dismissed before trial; (6 & 7) Donald Goforth and Randy Quinn, not Screening-Plaintiffs, consolidated case tried to a defense verdict; (8) Jeff Tamraz, not a Screening-Plaintiff, case tried to a plaintiff's verdict; and (9) Scott Jowers, not a Screening-Plaintiff, case not yet tried. Only Solis and Landry are Screening-Plaintiffs, and Solis is the only Screening-Plaintiff whose case went to trial.

involving Screening-Plaintiffs, defendants contend, those plaintiffs will more quickly be forced to undertake their "certify-or-dismiss" analysis, and will sooner reach the endpoint of pretrial proceedings, so that their cases can be tried in this and the transferor courts. According to defendants, this procedure will align the bellwether trial process better with the type of MDL cases actually pending, bring about a more swift resolution to all of these cases, and ultimately advance the entire MDL.

Plaintiffs respond, essentially, that the mechanisms employed by the Court in the *First Case Administration Order* are working, and that defendants have identified no compelling reason to modify the "roadmap." Plaintiffs also suggest that imposition of the requested discovery mechanism to all 632 cases at once is too onerous a burden for the parties to shoulder. While the Court agrees that designating over 600 cases for immediate medical records discovery would create a "pig in a python" problem, the Court also agrees with defendants that – as originally contemplated in the Court's *First Case Administration Order* – the time has come for designation of additional cases for medical-records discovery. Accordingly, in a separate Order, the Court will identify another batch of 100 cases for medical-records discovery. As before, the Court will choose these cases randomly.[10] The designation of these additional 100 cases will have the effects defendants seek, but will not overwhelm the parties or distract counsel from their other MDL efforts.

**IV.   Motion to Alter or Amend.**

As noted above, in its *First 100-Case Order*, the Court ordered counsel for plaintiffs to review the

---

[10] The Court will choose the 100 cases from the entire list of cases pending in this MDL. If defendants' statistics are correct, about 90 of these cases will have been filed by Screening-Plaintiffs. The Court has directed defendants to submit to the Special Master a list of all pending MDL cases, from which the next batch of 100 cases will be chosen.

medical records discovery in the 100 designated cases, meet with their clients, and then either certify a good-faith intent to try the matter, or instead to dismiss the case. So far, counsel for plaintiffs have made the latter choice in 17 cases, filing motions to voluntarily dismiss without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). The Court granted all 17 of these motions as unopposed.[11]

In their motion to alter or amend judgment, the defendants do not object to the Court's dismissal of these 17 cases without prejudice. Rather, as to 10 of these 17 cases, the plaintiffs combined their motion to dismiss with a "notice of election to participate in the Tolling Agreement," and defendants object to the participation of these 10 plaintiffs in the Tolling Agreement. Defendants ask the Court to "modify its dismissal orders to clarify that these plaintiffs may not participate in the Tolling Agreement." Motion at 6.

In support of their motion, defendants assert that, once counsel for a plaintiff has reviewed his client's medical records and met with his client to assess triability of the case, counsel should be willing

---

[11] The 17 cases were: (1) *Baer v. Lincoln Elec. Co.*, case no. 04-CV-17178; (2) *Berreth v. Lincoln Elec. Co.*, case no. 06-CV-17060; (3) *Cirilo v. Lincoln Elec. Co.*, case no. 04-CV-18607; (4) *Dezell v. Lincoln Elec. Co.*, case no. 04-CV-22635; (5) *Edwards v. Lincoln Elec. Co.*, case no. 05-CV-17198; (6) *Gros v. A. O. Smith Corp.*, 06-17128; (7) *Guess v. Lincoln Elec. Co.*, case no. 05-CV-18842; (8) *Hamilton v. Lincoln Elec. Co.*, case no. 05-CV-18677; (9) *Kerecman v. Lincoln Elec. Co.*, case no. 04-CV-18955; (10) *Maizer v. Lincoln Elec. Co.*, case no. 06-CV-17238; (11) *Ore v. Lincoln Elec. Co.*, case no. 04-CV-18949; (12) *Osborne v. Lincoln Elec. Co.*, case no. 05-CV-18679; (13) *Owens v. Lincoln Elec. Co.*, case no. 04-CV-17282; (14) *Prater v. Lincoln Elec. Co.*, case no. 05-CV-18815; (15) *Scoggins v. Lincoln Elec. Co.*, case no. 05-CV-17755; (16) *Sebastian v. Lincoln Elec. Co.*, case no. 04-CV-17130; and (17) *Sims v. Lincoln Elec. Co.*, case no. 06-CV-17194.

The seven cases where plaintiffs combined their motion to dismiss with a "notice of election to participate in the Tolling Agreement" are: *Berreth, Gros, Maizer, Owens, Prater, Sebastian,* and *Sims*.

to make a *final* choice: certify a present, good-faith intent to try the matter, or fully dismiss the case.[12] Defendants assert there should not be allowed a third choice of using the Tolling Agreement to serve as a "dumping ground" for cases where plaintiffs "have determined that they do not have a good-faith basis for proceeding to trial." Motion at 5. Defendants complain that allowing plaintiffs to use the Tolling Agreement to avoid a dismissal "with consequences," after having pursued medical records discovery and undertaking more in-depth client consultation, undermines the point of the entire exercise.[13]

Plaintiffs respond that neither the *First Case Administration Order* nor the *First 100-Case Order* prohibit their election to enter the Tolling Agreement following medical records discovery, and assert that there is no reason to imply such a prohibition. Plaintiffs also note they have *not* used this tactic in every instance – only 10 of the 17 dismissals were joined with a "notice of election to participate in the Tolling Agreement." It is unclear, however, what inference the plaintiffs intend the Court to draw from this statistic. Presumably, plaintiffs concluded that: (1) seven of the cases were *clearly* not worth pursuing at trial, so they should simply be dismissed; and (2) the other 10 cases *might* have merit, but were not counsel's "best cases," and counsel did not want to risk having one of these weaker cases chosen for the next MDL bellwether trial; thus, they dismissed the case but "saved it for later" by entering the Tolling Agreement. In other words, while plaintiffs' counsel's investigation might leave them with a good-faith basis for proceeding to trial with these seven cases, counsel is not as confident about *winning* these cases

---

[12] Defendants do not object to a plaintiff dismissing his case and entering the Tolling Agreement *before* initiation of the medical records discovery and "certify-or-dismiss" analysis required by the *First 100-Case Order*. Indeed, of the 100 plaintiffs initially designated in the *First 100-Case Order*, more than half dismissed their case and entered the Tolling Agreement; the Court then designated "replacement cases" in an amendment to the *First 100-Case Order*.

[13] Defendants do not object to a dismissal without prejudice, which would only allow refiling subject to applicable statutes of limitations and savings statutes.

as some others.

The Court concludes that defendants are correct in their contention that, following medical records discovery and client consultation, counsel for plaintiffs should be prepared finally to "fish or cut bait." The point of the "certify or dismiss" exercise is to determine which cases plaintiffs believe are truly trial-worthy; once those cases are identified, the next step is to begin to make then *trial-ready*, with resolution either as bellwether MDL cases or, following remand, in the transferor courts. If plaintiffs' counsel concludes a given case may have merit but is not strong enough to be worthy of full discovery, then counsel must either dismiss the case without prejudice, or move to withdraw representation. Counsel may not avoid moving on toward making the cases trial-ready by using the Tolling Agreement.

Accordingly, defendants' motion to alter or amend the dismissal Orders in the seven cases at issue is conditionally granted, as follows. Given that the Court has now clarified that plaintiffs do not have a choice they thought they had, the Court will allow counsel for the seven plaintiffs at issue to reconsider whether they want to dismiss their cases. **Thus, counsel for plaintiffs in those seven cases will have 30 days from the date of this Order to move for withdrawal of their (already-granted) unopposed motions to dismiss**. If counsel timely so moves, the Court will vacate the dismissals. If counsel does not so move, this Order makes clear that the cases are dismissed without prejudice, and plaintiffs may not participate in the Tolling Agreement.

**V.     The "Duke Power" Cases.**

Counsel for plaintiffs earlier filed five different cases, which – because the plaintiffs all worked at the Duke Power company – came to be known as the "Duke Power Cases." Plaintiffs also moved to consolidate all five cases for trial. Pending its decision on the motion to consolidate, the Court directed

10

counsel to prepare all five cases for trial; ultimately, however, the Court consolidated and tried only two of the cases, leaving three of them to be tried later. The three Duke Power cases still awaiting trial are: *Beheler*, *Carriker*, and *Steelman*.[14]

In earlier letters to the Court, defendants asked the Court to set one of the three remaining Duke Power cases for trial. Now, perceiving that plaintiffs have no interest in trying the remaining Duke Power cases, defendants ask the Court to dismiss the cases, with prejudice, for failure to prosecute.

The Court denies defendants' motion to dismiss *at this time*. **Rather, the Court directs the plaintiffs to make the following choice**. As noted above, the next-scheduled trial of a bellwether case (February of 2008) is *Jowers*, and the one scheduled after that (July of 2008) is *Byers*. **On or before the date 60 days from the date of this Order, plaintiffs will inform the Court whether the bellwether trial following *Byers* will be: (1) one of the Duke Power cases (and if so, which one);[15] or (2) a case chosen randomly by the Court.[16]** If the plaintiffs choose the latter option, the Court will promptly dismiss all three Duke Power cases, without prejudice.

---

[14] *Beheler v. Lincoln Electric Co.*, case no. 06-CV-17204; *Carriker v. Lincoln Electric Co.*, case no. 06-CV-17205; and *Steelman v. Lincoln Electric Co.*, case no. 06-CV-17206. The two Duke Power cases that already went to trial are *Goforth v. Lincoln Electric Co.*, case no. 06-CV-17217, and *Quinn v. Lincoln Electric Co.*, case no. 06-CV-17218.

[15] The Court recognizes that plaintiffs once stated a desire to try *all three* remaining Duke Power cases in one proceeding. The Court has no opinion on whether a motion to consolidate these three cases for trial would be well-taken. If the plaintiffs choose the first option, they must pick a single Duke Power case for trial; the question of whether the Court would then consolidate one or two of the remaining Duke Power cases will be addressed only if, and when, raised.

[16] The Court's random choice would be from the pool of cases certified by plaintiffs' counsel following medical records discovery, in the same fashion as the Court's choice of *Byers*.

**VI.     Medical Monitoring Plaintiffs**.

In the MDL case known as *Steele v. A.O. Smith Corp.*, 16 plaintiffs moved for certification of a class made up of welders seeking medical monitoring relief; each plaintiff was a putative class representative.  In an Order dated September 14, 2007 ("*Medical Monitoring Order*"), the Court denied the plaintiffs' motion for class certification.  In light of this denial, the Court ordered the 16 plaintiffs to notify the Court how they wished to proceed, and whether the Court retained jurisdiction over their case.  Specifically, the Court wrote:

> Having concluded that the *Steele* plaintiffs may not pursue their lawsuit as a class action, the question becomes: what may they do next?  Even though the Court has denied the motion for class certification, it appears possible the plaintiffs may still be allowed to pursue their individual claims in this MDL court, because their jurisdictional basis for doing so (CAFA) remains valid.  It also appears possible they may wish simply to dismiss their claims, as one of the bases for their motion for class certification was that the value of prosecuting "a medical monitoring claim is likely too small to merit an individual action."
> To answer this question, the Court directs the *Steele* plaintiffs to submit a position statement, within the next 30 days, declaring what they wish to do and what they believe CAFA and the Federal Rules allow them to do next.  The defendants may submit a response 14 days thereafter.

*Medical Monitoring Order* at 69 (footnotes omitted).  In a footnote, the Court specifically asked for briefing on the question of whether it retained jurisdiction over each plaintiff's case, in light of the denial of certification and the jurisdictional reach of the Class Action Fairness Act ("CAFA").  *Id.* at 69 n.195.

In response, counsel for plaintiffs stated they were "reviewing discovery and discussing options with each of the 16 class representatives," and asked for a deadline of December 7, 2007 to give a full response.  Response at 2 (master docket no. 2084).  Counsel further stated that each representative would

> pursue one of four options: (1) proceed on a class[-]wide basis in the *Steele* case on behalf of a more limited class, bringing claims specific to a given employer, site, or manufacturer defendant, (2) dismiss his claims, (3) file an individual personal injury claim (in case injury has progressed to the point where a claim for damages is more appropriate than a claim for preventative medical monitoring relief), or (4) submit a tolling agreement.

*Id.*

Despite the passage of the December 7, 2007 deadline, none of the 16 *Steele* plaintiffs have submitted a statement setting forth which option they will pursue.  Nor has any party addressed whether the Court has jurisdiction over their individual cases.[17]  Accordingly, the Court now orders each *Steele* plaintiff to submit the required position statement within 30 days of the date of this Order.  The failure to do so by a given plaintiff will result in the dismissal of his claims.  As before, defendants may submit a response 14 days thereafter.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: January 7, 2008

---

[17] The defendants submitted a reply to plaintiffs' position statement, arguing that several of the options plaintiffs stated they might pursue were inappropriate and should not be allowed.  Rather than issue an advisory opinion, the Court will only address these arguments in the context of an actual choice by the plaintiffs.  Defendants also did not address the question of jurisdiction, as directed.