03cv17000zbc-ord(Second-100-Cases).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: WELDING FUME PRODUCTS LIABILITY LITIGATION : : : : : : | Case No. 1:03-CV-17000 (MDL Docket No. 1535) JUDGE O'MALLEY **ORDER** |

On August 28, 2006, the Court entered an Order identifying a batch of 100 cases for medical records discovery. *See* master docket no. 1888 ("*First 100-Case Order*").[1] The Court ordered counsel for the plaintiffs in these 100 cases to review the medical records discovery, meet with their clients, and then determine whether the case was one which counsel and client fully believed should go to trial. This process is now virtually complete.

Subsequently, the Court entered a "*Second Case Administration Order*" (master docket no. 2107) which, among other things, stated the Court would "identify another batch of 100 cases for medical-records discovery." Attached to this Order is a chart listing the "second batch" of 100 cases designated for medical records discovery. As before, the parties will work to reach a joint agreement on the process of production.

The Court expects the parties will generally follow the process they used in connection with medical records discovery in the first batch of 100 cases. For ease of reference, the Court reiterates below some of the directives it set out earlier, in various Orders, regarding the obligations the parties

---

[1] The Court later amended the *First 100-Case Order*, designating replacement cases after some of the original 100 cases were dismissed. *See* docket nos. 1978, 2031.

must meet in connection with their discovery in the second batch of 100 cases.

For each of the 100 cases designated with this Order, counsel for the plaintiff will scan carefully his client's medical records to determine whether those records reveal any issues suggesting that pursuit of the case to trial might be unwarranted. Counsel's medical records review will include a comparison of those records to his client's sworn fact sheet. Examples of issues that plaintiff's counsel should examine carefully include: (1) possible drug or alcohol abuse; (2) any other medical conditions, or exposures to toxins, that could cause symptoms similar to those allegedly caused by the welding fume exposure; (3) known genetic or familial susceptibility to movement disorders; (4) serious discrepancies between the medical records and the fact sheet; and/or (5) suggestions of excessive exaggeration or dishonesty.[2]

Following this medical records review, counsel for the plaintiff will (again) interview his client carefully to obtain information bearing on whether pursuit of the case to trial might be unwarranted; this interview must include an explanation to the client that making false statements under oath can carry substantial personal penalties, both monetary and immuring.

After plaintiff's counsel in each case has undertaken the review of medical records and client interview discussed above, plaintiff's counsel will either: (1) submit a letter to defense counsel certifying he has completed this process and believes in good faith that he and his client will pursue the matter to trial; or (2) move to dismiss his case or to withdraw his representation.

---

[2] That a given plaintiff may have any of these issues, of course, does not mean he may not proceed to trial. The point is that plaintiffs' counsel's decision to pursue the matter to trial should be fully informed as early as possible, and the disclosure of all relevant information to defendants should occur, to the extent possible, before depositions begin. Further, the Court is not requiring plaintiffs' counsel to *guarantee* there will be no late surprises or client revelations during the discovery process, but the Court is requiring plaintiffs' counsel to make a substantial effort early on to achieve this goal.

      Plaintiffs' counsel shall send the certification letters to defense counsel, or move to dismiss or withdraw, within 60 days of the date that: (1) the client's second-round medical records are received, or (2) defendants notify plaintiffs' counsel that they do not intend to pursue a second round of medical-records discovery.[3]

      **IT IS SO ORDERED.**

      /s/ Kathleen M. O'Malley  
      **KATHLEEN McDONALD O'MALLEY**  
      **UNITED STATES DISTRICT JUDGE**

**DATED**: April 4, 2008

---

[3] The parties are directed to reach an agreement regarding notifications to each other of when medical records are requested, received, and so on. The Court's intent is to require plaintiffs' counsel to send the certification letters, or move to dismiss or withdraw, within 60 days of completion of second-round medical records discovery, or within 60 days of completion of first-round medical records discovery if there is no second round. To the extent plaintiffs or defendants request *third-round* medical records discovery for a given case, this will not change any deadlines absent agreement by defense counsel or good cause shown.