03cv17000zbr-ord(Stropki).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IN RE: WELDING FUME PRODUCTS : 
  LIABILITY LITIGATION :     Case No. 1:03-CV-17000
:     (MDL Docket No. 1535)
:
:     JUDGE O'MALLEY
:
:     **ORDER**

For the reasons stated below, defendant's motion to preserve the testimony of Mr. Stropki (docket no. 2286) is **DENIED**.

\*   \*   \*   \*   \*

On March 10, 2010, this Court issued an Order in the MDL bellwether case of *Cooley v. Lincoln Electric Co.*, case no. 05-CV-17734. *See Cooley* docket no. 274 ("*Cooley Order*"). In the *Cooley Order*, the Court addressed, among other things, the admissibility of certain testimony from witness Carl Peters, who was the 30(b)(6) designee of defendant Lincoln Electric Company. *Id.* at 30-33. Specifically, the Court ruled that Mr. Peters could not "repeat statements he heard made by Mr. [John] Stropki," Lincoln's Electric's CEO, because they were hearsay. *Id.* at 31-32. The Court further observed:

> [T]he rule that a 30(b)(6) designee cannot offer hearsay testimony holds especially true when there is no independent evidentiary basis that might otherwise prove the truth of the hearsay, such as corroborating testimony from the hearsay declarant. Conceivably, admission of Mr. Peters' statements regarding his conversations with Mr. Stropki, under the rubric of corporate knowledge, would be harmless if Mr. Stropki also testified, or if documents showed the accuracy of Mr. Peters' recollection. But defendants did not call Mr. Stropki, nor offer any documents

>   erasing hearsay concerns. Thus, there was no mechanism, such as cross-examination of Mr. Stropki, that would allow plaintiffs to test Mr. Peters' recitation of what Mr. Stropki allegedly said and believed. Without an opportunity to confront Mr. Stropki, plaintiffs' objection that Mr. Peters should not be allowed to repeat Mr. Stropki's statements is well-taken.

*Id.* at 32-33 (footnote omitted).

When this evidentiary issue arose during the *Cooley* trial, Lincoln Electric recognized that a part of its problem – that is, the problem of introducing evidence of what Mr. Stropki had to say regarding what Lincoln knew in the 1940s about the risk that manganese in welding fumes could cause neurological injury – was that Mr. Stropki's schedule often prevents him from appearing live at trial to offer this evidence himself. Thus, Lincoln suggested during the *Cooley* trial that it would like to memorialize on videotape the examination and cross-examination of Mr. Stropki, which could then be used in all future MDL bellwether trials. Defendants also suggested that, following this process, the Court should protect Mr. Stropki from additional deposition notice by any MDL plaintiff. In response, plaintiffs' counsel requested an opportunity to respond formally to defendants' suggestion, and defendants promised to file a motion raising the issue. Defendant Lincoln did file this motion and the question is now fully briefed.

In its motion, Lincoln cites case law standing for the proposition that "deposition notices directed at an official at the highest level or 'apex' of corporate management [carry] a tremendous potential for abuse or harassment." *Celerity v. Ultra Clean Holding, Inc.*, 2007 WL 205067 at *3 (N.D. Cal. Jan. 25, 2007). As another MDL court has observed, in complex litigation involving numerous related cases, "high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002). Thus,

a court may exercise its broad discretion over management of discovery and preclude plaintiffs from obtaining depositions of an apex executive. *See, e.g, Salter v. Upjohn Co.*, 593 F.2d 649 (5${}^{th}$ Cir. 1979) (affirming grant of corporation's motion for protective order shielding corporate president from deposition, because lower level officers had more knowledge of the facts at issue).[1] The Manual for Complex Litigation suggests that "[l]imiting repetitive depositions of some witnesses promotes efficiency, as does using videotaped depositions for witnesses likely to testify more than once," such as "significant decision makers, defendants, or experts." *Manual for Complex Litigation, Fourth,* §22.84 at 438, 439 (FJC 2004) (referring to mass tort litigation).

Relying on these propositions, Lincoln asks the Court to enter an order allowing defendants to conduct a videotaped preservation deposition of Mr. Stropki, which would be used in all future *Welding Fume* trials in lieu of live testimony. Lincoln notes Mr. Stropki has appeared in two MDL bellwether trials pursuant to subpoena (*Solis* and *Tamraz*), and he was subpoenaed to appear in a third (*Byers*), but the Court allowed him to appear via videotape in that trial, instead. Lincoln argues that "[r]equiring [Mr. Stropki's] repeated appearance at [future] welding fume trials will undermine his ability to effectively discharge his corporate responsibilities." Motion at 2. Lincoln observes

---

[1] The *Salter* court also noted that "[i]t is very unusual for a court to prohibit the taking of a deposition [of a knowledgeable apex executive] altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter*, 593 F.2d at 650. *See also Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991) (finding that, where there were better, alternative sources of testimony, deposing corporate vice president would be oppressive, inconvenient and burdensome); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985) (limiting C.E.O.'s participation in discovery, in order to balance the competing interests of protecting a very high-profile executive, Lee Iacocca, from abuse, with the rights of the plaintiffs to discover information); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6${}^{th}$ Cir.1981) (holding that "the scope of discovery is within the sound discretion of the trial court," and a "ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown") (citing Fed. R. Civ. P. 26(b)(2)(c)(iii)).

that Mr. Stropki has a demanding travel schedule and broad responsibilities, and also that – because Lincoln Electric is headquartered in Cleveland, Ohio – he will always be subject to the subpoena power of this Court. The preservation deposition that Lincoln requests would provide Mr. Stropki relief from future subpoena, "augment [his] testimony that has already been preserved – and would obviate the need for Mr. Stropki to appear at future MDL trials." *Id.*

In response, plaintiffs offer what they believe is a more simple solution: a stipulation "that they will not subpoena Mr. Stropki to any future MDL welding fume trials, absent some extraordinary change in circumstances." Response at 1. Plaintiffs state they are satisfied with the recorded trial-admissible testimony they have already obtained from Mr. Stropki, and will not subpoena him to testify at trial again. In light of this stipulation, plaintiffs note, "Lincoln's motion is to protect Mr. Stropki *from his own lawyers* calling him in future trials." *Id.* at 2 (emphasis in original). Plaintiffs then observe correctly that all of the legal authority discussed above stands for the proposition that a court may protect an apex executive from burdensome or repetitive discovery forced on him or her by opposing parties; there is no authority for protecting a corporate executive from his own lawyers.

The Court concludes that, considering all the circumstances, plaintiffs' stipulation does cure the problem. Arguably, if the facts of these cases were such that Mr. Stropki had to testify live at every *Welding Fume* trial, the repeated bringing of *Welding Fume* cases by plaintiffs would create a burden on Mr. Stropki similar to the discovery burden discussed in the case law. But history has shown this burden does not exist. Defendants have called Mr. Stropki as a trial witness in only two of the seven MDL bellwether trials (*Solis* and *Tamraz*), the last one being over two years ago.[2]

---

[2] Indeed, Lincoln Electric was not even a defendant in all of these bellwether trials.

Further, defendants did not feel the need to call Mr. Stropki to testify in the last four bellwether trials, even though they all took place in Cleveland, Ohio, where he lives, and even though Mr. Stropki actually appeared voluntarily at one of these trials (*Cooley*) as an observer. Lincoln asserts that "plaintiffs are the ones who chose to sue Lincoln, and if Lincoln's counsel believe that Mr. Stropki's testimony will assist the defense of any one of those suits, they should be able to offer his testimony without overburdening his schedule." Reply at 2. But it is within the scope of Mr. Stropki's normal corporate responsibility to testify in defense of the corporation from time to time; only when this responsibility becomes unduly burdensome is it appropriate for the Court to provide protection.[3]

---

[3] It is also worth noting that, in the last two MDL bellwether trials where Lincoln was a defendant (*Jowers* and *Cooley*), Lincoln chose to call Carl Peters as its 30(b)(6) designee, and not to call Mr. Stropki. Thus, the burden falling upon Mr. Stropki is already within Lincoln's control, to the extent it can call another executive to testify at trial. As noted in the beginning of this opinion, it is true that Mr. Peters cannot testify regarding the hearsay comments he heard from Mr. Stropki. If defendants believe Mr. Stropki's comments are necessary to explain his own prior, sworn, recorded testimony, however, it is necessary and appropriate for Mr. Stropki to appear at trial himself to offer that explanation.

Finally, Lincoln has suggested this Court should include, in its assessment of the burden imposed upon Mr. Stropki, his obligations in connection with state court *Welding Fume* cases. This additional factor does not change the Court's analysis, however, for two reasons: (1) there is no guarantee that a videotaped MDL trial deposition would protect Mr. Stropki from deposition in a state court case; and (2) other than an oral representation that Lincoln may subpoenae Mr. Stropki in a single Ohio case (*Boyd*), there is no evidence that Mr. Stropki has appeared (involuntarily or otherwise) in any state court case.

History shows Mr. Stropki's burden of appearing live at trial has not been undue, and plaintiffs' stipulation ensures any burden will remain low.[4]  Accordingly, the Court accepts plaintiffs' stipulation, and Lincoln Electric's motion is denied.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: April 7, 2010

---

[4]  If circumstances somehow change, so that the litigation burden on Mr. Stropki does increase substantially, defendants are free to approach the Court again to request reconsideration of their request.  Further, the Court will also continue to be open to suggestions (as it has in earlier trials) on how to accommodate Mr. Stropki's schedule on a case-by-case basis, such as allowing him to appear by live video teleconference.