03cv17000zcc-ord(QSF).wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: WELDING FUME PRODUCTS** | : |
| **LIABILITY LITIGATION** | :  Case No. 1:03-CV-17000 |
| | :  (MDL Docket No. 1535) |
| | : |
| | :  JUDGE O'MALLEY |
| | : |
| | :  **MEMORANDUM AND ORDER** |

The parties in this Multi-District Litigation have reached a global "Resolution Agreement," which establishes a full and final resolution of claims made by participating claimants who allege they suffered injury due to exposure to manganese in welding fumes attributable to products of one or more Defendants ("Welding Fume Claims"). The Resolution Agreement provides for payment of certain funds by Defendants, which funds will be allocated by a Claims Administrator, who is David R. Cohen. Accordingly, for good cause shown, this Court hereby Orders as follows.

1. The parties have entered into the Resolution Agreement at a time when the exact allocation among persons entitled to a portion of those funds ("Claimants") cannot be finalized. Hence, in the best interest of all parties, a fund, to be known as the "Welding Fume MDL Resolution Fund" (the "Fund"), shall be established as a Qualified Settlement Fund ("QSF") within the meaning of Treasury Regulation Section 1.468B-l and pursuant to this Court's subject matter jurisdiction under Treas. Reg. Section 1.468B-l(c)(1). The Fund shall remain subject to the continuing jurisdiction of this Court. The monies payable by defendants pursuant to the Resolution Agreement shall be paid into the Fund.

2. Given valid concerns about adding unreasonable delay or expense to the transfer of monies to Claimants, a QSF in this matter will: (l) facilitate placement of structured settlement annuities without requiring the signature / participation of any defendant; (2) permit resolution of claims by private companies or government agencies that may have a reimbursement right or lien against any funds awarded by the Claims Administrator to a Claimant; and (3) minimize expenses.

3. Mr. Cohen is appointed as Fund Administrator pursuant to the terms, conditions, indemnification,

and restrictions of the Resolution Agreement and attached "Claims Processing and Program Fund Allocation Protocol." The Fund Administrator is given the authority to conduct any and all activities necessary to administer the Fund as described in the Resolution Agreement and Protocol. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the Fund upon the execution of the Order. Mr. Cohen shall submit personally to the jurisdiction of this Court. If Mr. Cohen resigns or is unable to serve or fails to fulfill the duties of Fund Administrator, the Court will appoint a replacement with the advice of Plaintiffs' Liaison Counsel and the Plaintiffs' Executive Committee.

4. The Fund shall be held at USBank and/or BankPlus ("Banks"), and said Banks shall be responsible for any and all investment-related decisions. The Banks shall not distribute any income or principal from the Fund except pursuant to instruction from the Fund Administrator. No other person or entity is permitted to authorize or make any withdrawals from the Fund.

5. The Fund Administrator is authorized to distribute to Claimants payments for Claimant's claims, attorneys' fees, and litigation expenses, consistent with the Resolution Agreement and Protocol. Until such time that Claimants are entitled to settlement monies under the Resolution Agreement, no settlement monies shall be set apart for any Claimant, or otherwise made available so that he or she may draw upon or otherwise control said settlement monies. The Fund shall only make payments to Claimants according to the terms of the Resolution Agreement and Protocol.

6. The settlement monies are the sole property of the Fund. No portion of such monies shall be made available to any Claimant except as specifically set forth in the Resolution Agreement and Protocol. Until such time as monies are distributed, Claimants shall not possess any rights to demand or receive any portion of the monies or the escrowed monies or to mortgage, pledge, or encumber the same in any manner. The terms of this Order shall be construed so as to prevent Claimants from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund.

7. The Fund Administrator shall be indemnified and held harmless by Claimants from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund. Should the Fund Administrator be named as a party to, or threatened to be made a party, to any threatened, pending or completed action, suit, or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by Claimants against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by the Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of the Fund. The terms of any agreement between plaintiffs and the Claims Administrator, and the terms set out in the Protocol, shall further control the terms of appointment of the Fund Administrator.

8.  No bond shall be required, provided that all monies received by the Fund, which includes all principal and interest earned thereon, shall be deposited in an account comprised of (i) United States Agency, Government Sponsored Enterprises (GSEs) or Treasury securities or obligations (or a mutual fund invested solely in such instruments) and (ii) cash or cash-equivalent securities. Notwithstanding the foregoing, the Banks shall not be allowed to distribute any income or principal from the Fund except pursuant to instruction from the Fund Administrator.

9.  All taxes on the income of the Fund and expenses and costs incurred in connection with administration of the Fund (including, without limitation, fees and expenses of tax attorneys and accountants and the Fund Administrator) shall be paid out of the Fund and shall be considered to be a cost of administration of the Fund.

10. Upon request, the Fund Administrator will prepare and deliver Fund Statements ("Statements") to the Court. The Statements shall include, without limitation, a statement of receipts, investment earnings, and disbursements. The Fund Administrator shall provide the Statement no later than 30 days following the request.

11. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail, claim form and supporting documents, or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in his reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by any Claimant or Claimants' counsel.

12. The Fund Administrator is authorized, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund, and thereafter the Fund Administrator is discharged from any further responsibility with respect to the Fund.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY UNITED STATES CIRCUIT JUDGE FOR THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, SITTING BY DESIGNATION**

**DATED**: April 27, 2012